DEMYER *v.* MCGONEGAL.

## Rosa De Myer v. James McGonegal and another.

*Appearance bail: Default: Liability of bail: Bail to the action.* Bail to the sheriff was originally designed to temporarily liberate the defendant from close custody, and to place means in the sheriff's hands to insure the defendant's appearance to answer at the return of the writ, without which the action could not regularly proceed; and the undertaking of such bail was quite different from that of bail to the action.

*Bail: Failure of defendant to appear: Practice.* According to the original practice, if the defendant failed to appear after the return day of the writ, the suit was at a stand and the plaintiff was remitted to either one of two courses: he might either proceed against the sheriff, and leave him to proceed against the bail he had taken, or he might take an assignment of the bond given to the sheriff, and prosecute upon that.

*Civil suits commenced by arrest and bail: Appearance bail: Proceeding to judgment in principal suit: Waiver: Statutes construed: Circuit court rule 20: Practical construction.* The statutory provisions of this state on the subject of bail in civil cases are considered and analyzed, and while it is thought that, were the question a new one, the prosecution of the principal suit to final judgment without regard to bail or to procuring that appearance spoken of in the statute and referred to in the bond, and which the whole theory of practice in civil cases commenced by arrest and bail contemplates, ought, under such provisions, to operate as a complete waiver of all right to turn back and prosecute the bail, yet it is held that by practical construction, for nearly forty years, of these provisions, in connection with and as sanctioned by circuit court rule 20, it has come to be established that the plaintiff may if he choose abide by the bail to the sheriff, and go on with his action to final judgment, and afterwards, if needful, may recur to the bond to the sheriff as he might have done when the default happened.

*Bail to the sheriff: Money liability: Surrender of principal: Execution against the body.* Under this construction, however, the original neglect will not bind the appearance bail absolutely to respond in money, and preclude them entirely from surrendering their principal in their own exoneration; but their right to surrender continues to run with the right of the plaintiff to insist on their continued liability for the defendant's appearance, and does not terminate until in regular course an execution against the defendant's body has failed.

*Exoneration of bail: Order of discharge: Bailpiece: Questions of fact.* In a review on *certiorari* of proceedings for the exoneration of bail, an objection by the plaintiff that only one copy of the bailpiece was produced before the commissioner, and that his order of discharge was not endorsed on a second copy, if of any importance in any view, will not be considered on a record which is obscure as to the fact assumed by the objection, and where the objecting party has not deemed it of sufficient importance to require a further and more accurate return as to such fact.

*Exoneration of bail: Chamber business: Circuit court commissioner: Jurisdiction.* Exoneration of bail has always been considered within the range of chamber business; and is therefore within the jurisdiction of a circuit court commissioner, under our constitution (*Art. VI.,* § *16*) limiting his judicial functions to the exercise of such powers as a circuit judge may exercise at chambers.

*Submitted on briefs April 27.     Decided June 8.*

DEMYER *v.* MCGONEGAL.

*Certiorari* to Circuit Court Commissioner for Wayne County.

*Jackson & Wisner* and *C. I. Walker*, for plaintiff in *certiorari.*

*Atkinson, Hawley & Atkinson,* for defendants in *certiorari.*

GRAVES, CH. J:

This is a *certiorari* to revise an order of a circuit court commissioner exonerating the defendants as bail to the sheriff in a suit by the plaintiff against one James McGonegal, jr.

The record before us is deficient in several particulars, but as both parties appear anxious for a decision without delay, we shall endeavor to dispose of the case without further return.    In September, 1874, the plaintiff commenced a suit in the superior court of Detroit, by *capias,* against one James McGonegal, jr., for breach of promise to marry, and in her affidavit to obtain bail it was alleged that the defendant had seduced her.    It would seem that an order was made upon the writ fixing the amount of bail at five thousand dollars.    The writ was returnable on the 8th of September, which was the first day of the ensuing term. The defendant in the writ was arrested, and the defendants above named became bail to the sheriff.

The plaintiff waited over twenty days after the return day in the writ for the defendant to put in special bail, which however was not done; though some steps therefor seem to have been taken.    As neither side considers them of any force, they require no further notice.    After waiting as before mentioned, the plaintiff, without taking any steps against such bail to the sheriff or against the sheriff, and on the 3d of October, 1874, by her counsel, entered a rule in the common rule book as follows: "The time allowed defendant for putting in special bail in this cause having elapsed, and no such bail having been put in, on motion of Jackson & Wisner, attorneys for the plaintiff, ordered that the defend-

DEMYER *v.* MCGONEGAL.

ants' appearance in said cause be, and the same is hereby
entered, pursuant to the rules of this court." On the same
day a declaration was filed, and twelve days thereafter, and
on the 15th of October, the plaintiff's counsel entered a fur-
ther order, as follows: "The appearance of said defendant
having been entered upon motion of plaintiff's attorney, on
the 3d day of October, he not having put in special bail
within the time allowed him, and said plaintiff's declaration
having been filed on said third day of October, 1874, and
no appearance by said defendant having yet been made, on
motion of Jackson & Wisner, attorneys for plaintiff, it is
ordered that the default of said defendant, in not appearing
and pleading, be, and the same is hereby entered." This
was followed by another order on the 27th of the same
month, as follows: "The default of said defendant for
want of appearance and plea in this cause having been duly
entered, and more than four days in term having elapsed
since the entry thereof, on motion of Jackson & Wisner,
attorneys for the plaintiff, it is ordered that the said default
be, and the same is hereby made absolute; that interloc-
utory judgment be, and the same is hereby entered, and
that the damages of the plaintiff be assessed by a jury."

Subsequently to this, and on the 19th of November fol-
lowing, the plaintiff's counsel proceeded to an assessment o
damages by a jury, and the record of this proceeding com-
mences as follows: "In this cause the appearance of said
defendant, and his default in not pleading, having been duly
entered according to the rules and practice of this court,
and the said default having become absolute, and interlocu-
tory judgment having been thereupon entered, and it having
been referred to a jury to assess the plaintiff's damages,—
thereupon came a jury," etc. It is then recited that no
one appeared on the part of the defendant, and that the
damages were assessed at six thousand dollars. On the next
day final judgment was entered in these terms: "In this
cause, on motion of Jackson & Wisner, attorneys for said
plaintiff, ordered that said plaintiff have leave to amend

the writ of *capias ad respondendum* heretofore issued, by changing the action therein mentioned, from an action of trespass on the case for breach of promise to marry, to an action of trespass on the case upon promises for breach of promise to marry, and the damages of the said plaintiff having been heretofore duly assessed by a jury, at the sum of six thousand dollars, over and above her costs and charges by her suit in this behalf expended: Now, on motion of Jackson & Wisner, attorneys for said plaintiff, it is ordered and adjudged by the court now here, that the said plaintiff do recover against the said defendant the damages aforesaid, together with her costs and charges aforesaid to be taxed, and that said plaintiff have execution therefor.''

On the 5th of December following the costs were taxed, and a *fieri facias* was issued. We have no evidence of any execution against the body, or of the return of the execution against the property.

On the 7th of December, or two days after the issuing of the *fieri facias*, the defendant surrendered himself to the sheriff, who certified on a bailpiece, as the record states, that the defendant was in custody in exoneration of the bail, and on the same day "the bailpiece in said cause," as the return states, with the certificate upon it, was produced to the commissioner, who thereupon made an order committing the defendant to custody, which being done, he made another order, for the plaintiff to show cause on the eleventh of December why the bail should not be relieved from their liability, and thereafter, and on the twenty-second of December, to which time the proceeding was adjourned, the commissioner, after hearing counsel for and against the application, finally declared and ordered that the bail were discharged from liability as bail in the cause. This order, as the return states, was endorsed on "said bailpiece."

Two grounds of objection are stated to the order of the commissioner:

*First*, That he lacked the constitutional authority to adjudicate the matter;

*Second,* That the bond given by the bail to the sheriff had become forfeited, and their liability to the plaintiff in the action fixed.

The practice which seems to have obtained in the action exposes the proceedings to criticism on several grounds. But we think it needless to examine all such matters.

Bail to the sheriff was originally designed to temporarily liberate the defendant from close custody, and to place means in the sheriff's hands to insure the defendant's appearance to answer at the return of the writ; and it was a matter of the first importance that such appearance should take place, because without it the action could not regularly proceed. The appearance which was contemplated was not, however, necessarily an actual appearance in person, but by putting in new bail, called bail to the action, special bail, or bail above. This special bail, or bail above, was by recognizance, which was matter of record, and an act of appearance, and by it the bail were bound that if the defendant should be condemned he should pay or render himself a prisoner, and if he did not, that they would pay the condemnation. The undertaking of the bail to the sheriff, or bail below, was wholly different, and was adapted to the specific exigency. It was in the form of a bond to the sheriff, and was conditioned for the defendant's appearance at the return of the writ, which meant putting in and perfecting bail above.

The practice connected with bail in civil cases became quite complicated. This was not strange in view of the circumstance that the principal action could not regularly be carried on without the defendant's appearance was in some way secured, and in view of the fact that the taking of bail introduced so many new rights and incidents. The bail to the sheriff were bound for the defendant's appearance at the proper time, and the sheriff was entitled to rest upon this security till that time, and hence without his consent the bail could not be relieved earlier by the defendant's surrender, or by his being surrendered by his bail. When the writ was returned, if the defendant failed to appear and his

bail to the sheriff were consequently in default, the principal suit was at a stand; and since, according to theory, the sheriff was also at fault for not producing his prisoner, the plaintiff was remitted to either one of two courses. He might proceed against the sheriff, and leave him to go against the bail he had taken, or take an assignment of the bond given to the sheriff, and prosecute upon that. The proceedings in England depended upon the course of the court and particular rules and statutes, and many modifications have taken place. In this country we have never wholly lost sight of the substantial theory in England. Still very wide departures have been made in some particulars, and in no two of the states is the subject regulated in the same way. In some the main features agree. In Maine, Massachusetts and New Hampshire, and perhaps in other states, no other bail is required than such as is taken on the arrest, and the bond then given stands as for bail above as well as below.— *Pierce v. Read, 2 N. H., 359; Champion v. Noyes, 2 Mass., 481; Hale v. Russ, 1 Greenleaf, 336.*

In New York prior to the code, as in this, and many if not most of the states, there is or was provision for both kinds of bail, and more or less of the ancient regulations continue.

Though tedious it may not be unprofitable to glance through our statutes bearing on the subject.

*First*, The chapter entitled "Commencement of suits."— *Ch. 183, C. L.*

On being arrested the defendant is to be discharged on giving a bond to the officer, conditioned that such defendant will appear by putting in special bail within twenty days after the return day specified in the writ, and by perfecting such bail if required.—§ *5738.* On taking the bond the officer is to give to the sureties a bailpiece, the form of which is given.—§ *5739.* If the officer commits, he must return that it is for want of bail.—§ *5742.* In that case the plaintiff must declare before the end of the term next following that when the process is made returnable, and give

a copy to the defendant or the sheriff or jail-keeper, and failure will entitle the defendant to discharge and judgment of discontinuance.—§ 5743. When the defendant has appeared by causing his appearance to be entered, or by putting in and perfecting special bail when that is required, the plaintiff must declare by the end of the term next after the return of the writ.—§ 5744. And failure will entitle the defendant to judgment of discontinuance.—§ 5745.

*Second,* The chapter entitled "Bail in civil actions, and the proceedings connected therewith."—*Ch. 184, C. L.*

In all cases where special bail shall be required, a recognizance may be taken.—§ 5749. The next section gives the form, and the condition is, "that if the defendant is condemned, he shall pay the costs and condemnation, or render himself into the custody of the sheriff for the same, or if he fail so to do, that the sureties will pay the costs and condemnation for him."

The next section requires the officer who takes the recognizance to give to the persons becoming special bail a bail-piece, and prescribes the form.

*Section 5752* directs the mode of excepting, and limits the time therefor, and the time for perfecting after notice of exceptions.

The next section provides how the bail may justify.

The next two subdivisions of the chapter deal with two alternative remedies allowed to the plaintiff where the defendant fails to appear by putting in and perfecting special bail according to the exigency of the bond given to the sheriff. The first is a suit on this bond, and which, if required, the sheriff must assign to the plaintiff.

The second is a direct proceeding by the plaintiff against the sheriff. The first, containing three sections, is entitled "Proceedings on bail bond;" and the second, containing six sections, is entitled "Proceedings against the sheriff or other officer."

The first section under the head of "Proceedings on bail bond," provides that if special bail is not given and perfected

within the time limited by law, and the plaintiff is satisfied with the bail to the sheriff, he may take an assignment of the bond, and sue thereon in his own name.—§ *5754*.

The next section allows the proceedings in this suit on the bond to be set aside if irregular, or to be stayed on terms, "in order that a trial may be had in the original action;" and the last section in this division provides that if the failure to file and perfect special bail has not caused the plaintiff to lose a trial in the original action, the court may stay proceedings on the bail-bond upon the putting in and perfecting special bail, paying costs of assigning the bond, and of the proceedings thereon, receiving a declaration in the action, pleading issuably to the merits, "so that the original cause may be tried at the same term if the plaintiff shall so elect," and if the plaintiff shall have lost a trial by means of the default, judgment shall be entered on the bail-bond as security.

*Section 6082*, under the head of "Executions," provides that in those cases in which bail shall have been taken on arrest and the bond shall have been assigned to the plaintiff, and in those cases in which special bail shall have been filed, no execution shall issue against the body of the defendant until one against his property shall have been returned unsatisfied wholly or in part.

We may next notice the provisions under the head of "Proceedings against the sheriff or other officer."

In case special bail is not put in and perfected within proper time, the sheriff may be ruled to put in and perfect such bail.—§ *5757*. If the rule is not complied with, the sheriff may be attached (§ *5758*), and thereupon the court by summary proceedings may ascertain the amount due the plaintiff as though interlocutory judgment had passed for him, and may give judgment against the sheriff for the amount with costs.—§ *5759*. If the court find the sheriff ought to pay, and he confess judgment to the plaintiff for the amount with costs, all other proceedings against him must be stayed until he shall have reasonable time to obtain

judgment on the bond given him on the arrest and to collect the amount.—§ *5760*. After reasonable time, if the sheriff do not satisfy the demand, the court must award execution against him, and on failure to collect of him, recourse is to be had to his official bond.—§ *5761*.

The sheriff for his own indemnity may put in and perfect special bail, at any time before judgment against himself, on payment of costs, and this will not be deemed performance of the condition of the bond taken by him on the arrest; but he may still sue on such bond, and recover all damages sustained by him through the neglect of the defendant to put in special bail.—§ *5762*.

The next division of the chapter, and entitled "Actions against special bail," supposes special bail to have been given, and is merely applicable to that state of things.

The remaining head of the chapter is entitled "Surrender of defendant," and comprises three sections.

It provides that the special bail of any defendant may surrender him, or that such defendant (that is a defendant who has given special bail), may surrender himself in exoneration of his bail before any circuit judge or circuit court commissioner.—§ *5768*. The next section marks out the mode. The last section provides that when a bail-bond shall have been taken on the arrest of a defendant, the bail therein may surrender him, or he may surrender himself, in exoneration of his bail, in the same manner, before the same officers, and with the like effect, as provided in respect to special bail.

*Section 6083*, under the head of "Executions," allows an execution against the body of a defendant who has been surrendered in exoneration of his bail; and *section 6122* provides that every person surrendered in exoneration of his bail shall be kept in secure custody at his own expense until he shall satisfy the judgment against him, or be discharged according to law.

Every statute bearing on the subject, so far as recollected, has now been noticed, and if the question were a new one,

and not concluded by practical construction, I should say without hesitation that the course adopted by the plaintiff in the action operated to deprive her of all recourse against the bail to the sheriff, and that the proceeding before the commissioner was for that reason without any legal prejudice to her. As marked out by the bond, and the various statutes, I should consider the obligation of the bail given to the sheriff as intended, on the one hand, to indemnify the sheriff in case of his being pursued by the plaintiff for the failure of defendant to appear by putting in special bail, and on the other, to afford an elective remedy to the plaintiff in case of such failure; the plaintiff having an option to proceed against the sheriff or against the bail, and being confined to that one of the two courses selected. And I should deem the plaintiff's prosecution of the principal suit to final judgment, as was the case here, without regard to bail, and without waiting to procure that appearance spoken of in the statute and referred to in the bond, and which the whole theory of practice in civil cases commenced by arrest and bail contemplates, as a complete waiver of all right to turn back and prosecute the bail.—*Huguet v. Hallet, 1 Caines R., 55; Beecker v. Simmons, 7 J. R., 119; Valentine v. Smith, 8 Ohio (Hammond), 26; Candee v. Kelsey, 7 Hammond, Pt. 2d, p. 210; Hubbard v. Shaler, 2 Day, 195.*

But these statutory provisions have remained substantially as at present for more than forty years, and certainly for nearly that length of time they have received a different practical construction. As far back as the code of rules of 1839, I find as *Rule 15* the same which stands in the present code as *Rule 20*, and in the code of 1847 stood as *Rule 19.*

It is as follows: "When a defendant has been taken upon a *capias ad respondendum* and has given satisfactory appearance bail, the plaintiff may proceed to final judgment; which proceeding shall not release the appearance bail. Until the defendant has appeared and perfected special bail he is not entitled to a copy of the declaration, nor can he plead thereto, nor take any default against the plaintiff; and where

the defendant in any original writ accepts service, his appearance may be entered, and he will be considered in court."

During the long period mentioned both bench and bar have acted upon this rule, and it is now too late to question its consistency with a proper construction of the system of provisions already noticed. It has always been considered as authorizing the plaintiff, if he chose to abide by the bail to the sheriff, to pass by their neglect to put in and perfect special bail, and to go on with his action to final judgment, and thereafter if needful to recur to the bond to the sheriff, as he might have done when the default happened. And yielding, as I feel compelled to yield, though somewhat reluctantly, to the practical construction of more than a third of a century, I can discover no safe or sensible ground for holding that the original neglect binds the appearance bail absolutely to respond in money, and excludes them entirely from rendering their principal. When they made default, the plaintiff, independently of *Rule 20*, had an election either to take an assignment of the bond and sue upon it, or proceed directly against the sheriff, and the election of one remedy would have excluded the other, and it is difficult to see how the omission to do either could operate to fix the bail. It seems to me their right to surrender must run with the right of the plaintiff to insist on their continued liability for the defendant's appearance. Why should this right of theirs cease when the plaintiff is not delayed, and when no steps on her part manifest an election to resort to the bail?

The prosecution of the suit to judgment against the defendant was not such a step. That course was one taken in spite of the default, in spite of the neglect of defendant to appear, and not in consequence of it. When judgment is taken in that way, the rights of the parties, so far as the sole act of surrender is concerned, remain as they were when the default took place and the plaintiff ignored it and made no election to hold the bail, and the right to surrender ought to continue until in regular course an execution

against the body fails. If the rule of court perpetuates the liability of the bail, notwithstanding the proceeding directly to judgment by the plaintiff, does not the liability so perpetuated include a right, if not an obligation, by the appearance bail to render the defendant's body in execution? It appears so to me.

When the plaintiff's counsel passed by the default and neither elected to pursue the sheriff or take an assignment of the bond, but held in reserve the right to elect at a future time to have recourse against the bail, it was, I think, left open to the bail to surrender their principal in order to subject him to the plaintiff's process.

It is next objected in substance that only one copy of the bailpiece was produced before the commissioner, and that his order of discharge was not endorsed on a second copy.

In regard to this the return is very obscure, and as the objection does not proceed from the defendant, he in fact having rendered himself, but from the plaintiff, and the point has not been deemed of importance enough for the plaintiff to require a further return to show how the fact really was, it would not be right to give weight to it, if in any view it might be thought worthy of consideration.

Lastly, it is urged that in adjudicating the matter the commissioner exercised judicial functions beyond his constitutional authority.

This objection is entirely without force.

Exoneration of bail has always been considered within the range of chamber business.—*Tidd, 310 to 314.*

Confining the determination to the objections made by the plaintiff in *certiorari*, and as those objections stand upon the record before us, I perceive no satisfactory ground for quashing the order of the commissioner, and it must therefore be affirmed, with costs.

The other Justices concurred.