GREENE *v.* HERTZIG.

BAIL—CAPIAS AD RESPONDENDUM—JUDGMENT AGAINST PRINCIPAL
DOES NOT WAIVE RIGHT TO PROCEED AGAINST SURETIES—CIRCUIT
COURT RULE.
  The common-law rule that a plaintiff who proceeds to
  judgment against a defendant taken on a *capias ad
  respondendum* who gives appearance bail but fails to
  perfect special bail waives his right to proceed against
  the sureties has never been in force in this State, and the
  practice in this State of allowing a plaintiff in such case
  to have recourse to the bail is *held*, not changed by the
  abrogation in 1897 of Circuit Court Rule No. 20, since it
  was not based entirely upon said rule but also upon the
  statutes.

Case-made from Kent; Brown (William B.), J.
Submitted October 10, 1923. - (Docket No. 68.)    De-
cided December 19, 1923.

Assumpsit by Daniel J. Greene, assignee of Peter
Viergever, sheriff of Kent county, against Theresa
Hertzig and another on a statutory bond.    Judgment
for plaintiff.    Defendants appeal.    Affirmed.

*John M. Dunham*, for appellants.

*F. C. Miller*, for appellee.

BIRD, J.    Plaintiff commenced a suit in the Kent
circuit court against one Powell by *capias ad respond-
endum*.    When arrested Powell gave an appearance
bond to the sheriff, with defendants as sureties.    No
special bail was ever perfected, but defendant entered
his appearance by attorney and filed his plea.    He
made no defense and judgment was taken against him
for the amount of plaintiff's claim.    A *fieri facias*

was then issued against the goods and chattels of Powell, but it was returned unsatisfied. A *capias ad satisfaciendum* was then taken out. By this time Powell had fled and the writ was returned "not found." Upon request of plaintiff the sheriff then assigned the appearance bond to him, and he commenced this suit against the defendant sureties. Defendants made a motion to dismiss the suit against them, on the ground that by proceeding to judgment in the principal suit plaintiff had waived his right to proceed against them as bail. The trial court denied the motion and plaintiff recovered the amount of his judgment and costs in his suit against Powell. Counsel now raises the same question in this court, and it is the sole question presented.

Appellants' position is that by the common-law rule plaintiff waived his right to proceed against the sureties by first prosecuting the principal suit to judgment. He concedes, however, that this has not been the rule in Michigan up to the time the old Circuit Court Rule No. 20 was abrogated in 1897, but he insists when that rule was abrogated the common-law rule came into force, and is now, or ought to be, the law. While counsel are not altogether in accord as to the common-law rule we agree with defendants' counsel in his statement of the common-law rule. We also agree with him that the common-law rule was never in force in this State up to 1897, but we are compelled to disagree with him that by the abrogation of Rule 20 the common-law rule came into force.

This precise question was very fully considered in *DeMyer* v. *McGonegal*, 32 Mich. 120. In the opinion, after referring to all the provisions of the statute bearing upon the practice, Chief Justice GRAVES said:

"Every statute bearing on the subject, so far as recollected, has now been noticed, and if the question were a new one, and not concluded by practical construction, I should say without hesitation that the

course adopted by the plaintiff in the action operated to deprive her of all recourse against the bail to the sheriff, and that the proceeding before the commissioner was for that reason without any legal prejudice to her. As marked out by the bond, and the various statutes, I should consider the obligation of the bail given to the sheriff as intended, on the one hand, to indemnify the sheriff in case of his being pursued by the plaintiff for the failure of defendant to appear by putting in special bail, and on the other, to afford an elective remedy to the plaintiff in case of such failure; the plaintiff having an option to proceed against the sheriff or against the bail, and being confined to that one of the two courses selected. And I should deem the plaintiff's prosecution of the principal suit to final judgment, as was the case here, without regard to bail, and without waiting to procure that appearance spoken of in the statute and referred to in the bond, and which the whole theory of practice in civil cases commenced by arrest and bail contemplates, as a complete waiver of all right to turn back and prosecute the bail. *Huguet* v. *Hallet,* 1 Caines (N. Y.), 55; *Beecker* v. *Simmons,* 7 Johns. (N. Y.) 119; *Valentine* v. *Smith,* 8 Ohio (Hammond), 26; *Candee* v. *Kelsey,* 7 Ohio (Hammond), pt. 2d, p. 210; *Hubbard* v. *Shaler,* 2 Day (Conn.), 195.

"But these statutory provisions have remained substantially as at present for more than forty years, and certainly for nearly that length of time they have received a different practical construction. As far back as the code of rules of 1839, I find as Rule 15 the same which stands in the present code as Rule 20, and in the code of 1847 stood as Rule 19.

"It is as follows:

" 'When a defendant has been taken upon a capias ad respondendum and has given satisfactory appearance bail, the plaintiff may proceed to final judgment; which proceeding shall not release the appearance bail. Until the defendant has appeared and perfected special bail he is not entitled to a copy of the declaration, nor can he plead thereto, nor take any default against the plaintiff; and where the defendant in any original writ accepts service, his appearance may be entered, and he will be considered in court.'

225—Mich.—25.

"During the long period mentioned both bench and bar have acted upon this rule, and it is now too late to question its consistency with a proper construction of the system of provisions already noticed. It has always been considered as authorizing the plaintiff, if he chose to abide by the bail to the sheriff, to pass by their neglect to put in and perfect special bail, and to go on with his action to final judgment, and thereafter if needful to recur to the bond to the sheriff, as he might have done when the default happened."

The question was again raised in *Wilcox* v. *Ismon*, 34 Mich. 268, and was disposed of by Chief Justice COOLEY, as follows:

"V. The point is made that plaintiffs, by accepting a plea and proceeding in the suit, waived their right to proceed against the appearance bail. This point was referred to in *DeMyer* v. *McGonegal*, 32 Mich. 120, and what is there said indicates our views against it. There seems to be no necessity for considering it further.

"VI. The defendants objected to the judgment in the original suit being given in evidence against them. But this was the proper method to show the damages the plaintiffs had sustained. The bail had become responsible for the defendant's appearance and for his putting in special bail. If he failed in this, the sureties were responsible to the same extent that the special bail would have been, had any been entered. It is also claimed that the sureties were discharged by the neglect to move against the sheriff or his bail. But we think there is nothing in this. The plaintiffs had their option to proceed against the sheriff or to take an assignment of the bond. They chose the latter course. There was no delay that the statute permits these parties to take advantage of, nor was there any that operated to their prejudice."

And the practice, as established by these cases, has been recognized in many cases which have since been decided. It should be noted, however, that the question does not appear to have been before the court since the abrogation of Rule 20 in 1897. If counsel

were correct in his conclusion that the practice rested solely upon Rule 20, there would be much force in his contention that upon repeal of Rule 20 the practice went to the common-law rule.    A careful consideration of *DeMyer* v. *McGonegal.* makes it apparent that Chief Justice GRAVES reached the conclusion that the rule in Michigan differed from the common-law rule, principally by reason of the several provisions of the statute.    He uses this language before he refers to Rule 20:

"But these statutory provisions have remained substantially as at present for more than forty years, and certainly for nearly that length of time they have received a different practical construction."

And, further, he says:

"During the long period mentioned, both, bench and bar, have acted upon this rule, and it is now too late to question its consistency with a proper construction of the system of *provisions* already noticed."

Had Chief Justice GRAVES intended to rest the Michigan rule solely upon court Rule 20, he probably would not have used the language quoted.    A fair conclusion to draw from what is said in the opinion is that the court considered both, the provisions of the statute and Rule 20, and this appears to have been the understanding of the court reporter, who, at the time, made the head notes.    He used this language in the third head note:

"Yet it is held that by practical construction, for nearly forty years, of these provisions, *in connection with and as sanctioned by circuit court rule 20,* it has come to be established that the plaintiff may, if he choose, abide by the bail to the sheriff and go on with his action to final judgment, and afterwards, if needful, may recur to the bond to the sheriff as he might have done when the default happened."

And there is much to be said in favor of the rule as established in these cases.

(*a*) If defendant is allowed to proceed to judgment in the principal case it furnishes a measure by which judgment can be fixed against the sureties in a subsequent suit.

(*b*) If judgment is first taken against the sureties it must be for the face amount of their undertaking as security.

(*c*) There appears to be no sound reason for saying that because the sureties have failed to produce their principal, as they have undertaken to do, they should have the advantage of the technical defense of waiver.

(*d*) It is equitable to the sureties for plaintiff to first proceed against the principal and satisfy his claim, if possible, from his goods and chattels and, failing in that, to then proceed against them.

The common-law practice attending writs of *capias ad respondendum* and *ad satisfaciendum* was, and is, exceedingly technical and exacting. The Michigan rule on the question of practice involved here was an improvement on the common-law rule, and even if it could be successfully said that the Michigan rule owes its existence solely to the old Circuit Court Rule No. 20, I would not be in favor of adopting the common-law rule, because of the abrogation of Rule 20. The whole tendency of the modern legal world is to simplify and liberalize the rules of pleading and practice. To revert now to the common-law rule would be flying directly in the face of this modern tendency.

The trial court reached the right conclusion and the judgment will be affirmed.

WIEST, C. J., and FELLOWS, McDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.